**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SALWA SANANY ALAUBALI, *et al.*, | No. C 06-5787 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket Nos. 30, 45, 53] |
| RITE AID CORPORATION, | |
| Defendant. | |

Before the Court is defendant Rite Aid Corporation's (Rite Aid) motion for summary judgment [Docket No. 30] or, in the alternative, its motion for summary adjudication. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, Rite Aid's motion for summary judgment is hereby GRANTED.

## BACKGROUND

This case arises out of a fatal tractor-trailer crash on August 21, 2004, near the top of a mountain pass in Placer County, California. The plaintiffs are the wife and three minor children of the decedent, who at the time of the accident was an employee of Swift Transportation, Inc. (Swift). *See* Docket No. 43 at 1. The defendant is Rite Aid, a nationwide retail drug store chain that contracted with Swift for transportation services. *See* Docket No. 31, ¶ 2; Ex. A, B.

In October of 2002, Rite Aid and Swift entered a written agreement whereby Swift was to provide transport services in exchange for payments issued according to rates and charges outlined in the contract. *See* Docket No. 31, Ex. A, B. The agreement referred to Rite Aid as the "shipper" and Swift as the "carrier," and stated that "[c]arrier will at all times be an independent contractor of shipper." *Id.*, Ex. A at 2. However, the vehicles used in the transit services were provided by Rite Aid to Swift. *Id.*, Ex. B at 1.

On the evening of the accident, Swift assigned two of its drivers, Badr Alaubali and Christopher

1  Thomas, to transport a load of Rite Aid goods from Woodland, California, to Denver, Colorado, a
2  distance of about 1185 miles. *See* Docket No. 43 at 3. The plaintiffs allege Thomas was a "driver
3  trainee" who had no experience or training in operating the double-trailer vehicle that the two men
4  attached to the trailer that night. *Id.* According to a California Highway Patrol report, the accident
5  occurred because the driver was traveling at a high rate of speed and failed to negotiate a turn in the
6  freeway. *See* Docket No. 43, Nissenberg Decl., Ex. 3. At the time of the crash, the decedent, Mr.
7  Alaubali, was asleep in the tractor's "sleeper cab" and was burned to death. *See* Docket No. 43 at 3.

8  The plaintiffs have sought and received workers' compensation death benefits based on the
9  decedent's employment with Swift. *See* Docket No. 30 at 3. They now seek relief against Rite Aid in
10 federal district court based upon three causes of action: 1) negligence, 2) violation of federal safety
11 regulation 49 C.F.R. § 391.11 and 3) violation of federal safety regulation 49 C.F.R. § 380.113.

12
13                                    **LEGAL STANDARDS**

14 Summary judgment is appropriate if no genuine issue of material fact exists and the moving
15 party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477
16 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no
17 genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir.
18 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the
19 non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip*
20 *Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect
21 the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

22 In responding to a properly supported summary judgment motion, the non-movant cannot merely
23 rely on the pleadings, but must present specific and supported material facts, of significant probative
24 value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475
25 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal*
26 *Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of
27 material fact exists, the court views the evidence and draws inferences in the light most favorable to the

28

non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

## ANALYSIS

### A.   Negligence

Rite Aid bases its summary judgment motion on the theory that, as a shipper of goods, it owes no duty to the employees of an independent contractor hired for transportation services and therefore cannot be negligent. Rite Aid cites *Privette v. Superior Court*, 5 Cal. 4th 689 (Cal. 1993) for the general proposition that "[a]t common law, a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." *Id.* at 693.

In her opposition to summary judgment, Alaubali offers no proof that the general rule stated in *Privette* should not apply. Instead, Alaubali asserts that a partnership or joint venture, rather than an independent contractor relationship, existed between Rite Aid and Swift on the day of the fatal crash. *See* Docket No. 43 at 4. Such a partnership or joint venture, Alaubali argues, would make Rite Aid responsible for Swift's negligence under general partnership principles and under the reasoning of cases such as *Rogness v. English Moss Joint Venturers*, 194 Cal. App. 3d 190, 191 (Cal. Ct. App. 1987) ("an employee of one party in a joint venture is not as a matter of law also an employee of the joint venture itself or the other joint venturers and therefore is not limited to his workers compensation remedy under the Labor Code in seeking recovery from the remaining joint venturers for alleged negligence").

### 1.   Partnership theory

"Generally, a partnership connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business." *Chambers v. Kay*, 56 P.3d 645, 651 (Cal. 2002) (citing *Nelson v. Abraham*, 177 P.2d 931, 933 (Cal. 1947)); *Wheeler v. Farmer*, 38 Cal. 203, 213 (Cal. 1869); *Alliance Payment Systems, Inc. v. Walczer*, 61 Cal. Rptr. 3d 789, 804 (Cal. Ct. App. 2007). The existence of a partnership is a question of fact. *Persson v. Smart Inventions, Inc.*, 23 Cal. Rptr. 3d 335, 347 (Cal. Ct. App. 2005); *see Holmes v. Lerner*, 88 Cal. Rptr. 2d 130 (Cal. Ct. App. 1999).

To support her assertion of a Swift-Rite Aid partnership agreement, Alaubali relies primarily upon a single document called the "Dedicated Driver Training Guide," a handbook created by Swift for Swift drivers on the west coast. Docket No. 49, Ex. G at 8. The document refers to the "Swift/Rite Aid Partnership" at various times and in one instance states to Swift drivers: "[Y]ou represent Rite Aid Corporation." *See* Docket No. 43 at 5. By her own admission, Alaubali concedes that labels affixed to relationships between parties are not determinative of the actual relationship. *See* Docket No. 43 at 4 (citing *Martin v. Phillips Petroleum Co.*, 42 Cal. App. 3d 916, 919 (Cal. 1974)). Yet the plaintiff asks the Court to consider these snippets in the training guide and to disregard the actual contract between Rite Aid and Swift as determinative of the parties' relationship. The contract itself makes it clear that "[Swift] will at all times be an independent contractor of [Rite Aid]." Docket No. 31, Ex. A at 2.

Aside from these scattered phrases in the driver's training guide, Alaubali provides no evidence of a partnership arrangement between Rite Aid and Swift. There is no proof of any "sharing in the profits and losses of a continuing business." *Chambers*, 56 P.3d at 651. Nor is there any proof of co-ownership in partnership property – in fact the opposite exists. As expressed in the parties' contract,

> If an interchanged trailer is damaged while in [Swift's] possession, then [Swift] shall repair the trailer so as to place the trailer in the condition in which [Swift] received the trailer, ordinary wear and tear excepted. If [Swift] fails to make such repairs, [Rite Aid] shall makes said repairs and invoice [Swift].

Docket No. 31, Ex. B at 3. Such language suggests a desire by each party to keep its property separate from the other. Since Alaubali fails to raise a material issue of fact in dispute as to whether Rite Aid and Swift were engaged in a partnership rather than an independent contractor arrangement, there is no proof Rite Aid owed the plaintiff a duty that was breached, and therefore her negligence claims fail under this theory.

Additionally, California law prohibits third-party negligence claims in the context of the independent contractor relationship not only because workers' compensation statutes adequately address

4

work-related injuries such as the one in this case,[1] but also because "the principal who hires an independent contractor should be subject to no greater liability than its [independent contractor] agent, whose exposure for injury to an employee is limited to providing workers' compensation insurance." *Privette*, 5 Cal. 4th at 699 (citing *Olson v. Kilstofte & Vosejpka*, Inc., 327 F. Supp. 583, 587 (D.C. Minn. 1971); *see also Camargo v. Tjaarda Dairy*, 25 Cal. 4th 1235, 1245 (Cal. 2001) (denying liability under a "negligent hiring" theory). Since Alaubali raises no genuine issue of material fact regarding her negligence action under a partnership theory, Rite Aid is entitled to summary judgment on this claim.

### 2. Negligent entrustment

Even if Alaubali could establish some type of duty owed to the decedent by Rite Aid, her claim based on the theory of negligent entrustment fails. In California, the elements of negligent entrustment are 1) the driver was negligent in operating the vehicle, 2) the defendant was the owner of the vehicle, 3) the defendant knew or should have known the driver was incompetent or unfit to drive the vehicle, 4) the defendant permitted the driver to use the vehicle and 5) the driver's incompetence was a substantial factor in causing harm to the plaintiff. *Jeld-Wen, Inc. v. Superior Court*, 32 Cal. Rptr. 3d 351, 358 (Cal. Ct. App. 2005) (citing CACI JURY INSTRUCTION NO. 724); *National Union Fire Ins. Co. v. Showa Shipping Co., Ltd.,* 166 F.3d 343 (9th Cir. 1999).

In the present case, Alaubali offers no evidence that Rite Aid had any control over who drove the trailers, or that it otherwise permitted Thomas to drive the vehicle. Rite Aid entrusted all control of transport duties to Swift,[2] an established nationwide carrier with one of the largest fleets in the United States. *See* Docket No. 33, ¶ 1. Swift alone chose its drivers and the route they were to take for deliveries. *See* Docket No. 31, ¶ 8. Since Rite Aid played no part in appointing Thomas as a driver, Alaubali cannot establish the elements of negligent entrustment and Rite Aid is entitled to summary judgment under this theory.

### 3. Negligent selection of an independent contractor

---

[1] There is no dispute that Alaubali is currently receiving workers' compensation death benefits of approximately $4,000 per month. *See* Docket No. 34, Ex. E at 139.

[2] *See* Docket No. 31, Ex. A at 2.

5

1    Although not mentioned in her initial complaint, Alaubali asserts in her summary judgment
2 opposition an alternative theory of liability known as "negligent selection of an independent contractor."
3 Docket No. 43 at 15.  Under this theory, Alaubali argues Rite Aid had a duty to investigate the
4 reputation of the independent contractor it hired because

> [I]f the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence.

9 *L.B. Foster Co. v. Hurnblad*, 418 F.2d 727, 731-32 (9th Cir. 1969) (quoting RESTATEMENT (SECOND)
10 OF TORTS, COMMENT C AT 379 (1965)).

11    Even if Rite Aid had a duty to investigate Swift's competency similar to the obligation outlined
12 in *Foster*, Alaubali does not dispute that Swift, as an established, licensed commercial motor carrier with
13 one of the largest truck fleets in the United States,[3] is a competent hauler.  Nor does the plaintiff argue
14 that Rite Aid was negligent in choosing Swift to haul its goods.  These facts alone entitle Rite Aid to
15 summary judgment under this theory of negligence, despite Alaubali's untenable and unsupported view
16 that Rite Aid should have inquired into the competency of all of Swift's drivers.  *See* Docket No. 43 at
17 17.

18    The *Foster* case, the only source upon which Alaubali relies for her alternative negligence claim,
19 is distinguishable from the present case.  The *Foster* decision came in the context of reviewing a jury
20 verdict in which numerous findings of fact shed light on the "fly-by-night" character of the
21 transportation company.  *Id.* at 730.  None of the facts relevant in that case, such as the short time the
22 company had existed or its lack of government authorization for interstate hauling, is present here.  The
23 contract between Rite Aid and Swift actually requires the carrier to "comply with all laws and
24 regulations applicable to the Services.  Carrier warrants that it has been authorized by the U.S.
25 Department of Transportation to operate as a motor carrier and that such authority is currently in full

---

[3]Docket No. 33, ¶ 1.

1 force and effect." *See* Docket No. 31, Ex. A at 1-2. Rather than being a "fly-by-night" company, Swift
2 is one of the largest motor carriers in the United States and has "a strong reputation in the industry."
3 Docket No. 33, ¶ 1.

4 Since the *Foster* case offers no insight into the present facts, and since Alaubali provides no
5 other support for her negligent independent contractor selection theory, she fails to raise a genuine issue
6 of material fact under this claims and summary judgment should be granted.

**4.     Negligence under a bailor-bailee theory**

8 Alaubali's last theory of negligence, which also appears for the first time in her opposition to
9 summary judgment, asserts there exists a bailor-bailee relationship between Rite Aid and the two Swift
10 drivers involved in the crash because Rite Aid supplied its trailers to the drivers. *See* Docket No. 43 at
11 9. Alaubali refers to the California Civil Code, which states that "[e]veryone is responsible, not only
12 for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care
13 or skill in the management of his
14 property. . . ." CAL. CIV. CODE § 1714.

15 Alaubali's claim under this theory is meritless because there is no evidence Rite Aid was
16 negligent in supplying its trailers to Swift. It was Swift -- not Swift's individual drivers -- that qualifies
17 as the "bailee" in this case because, under the terms of the carrier agreement, Swift assumes full
18 responsibility to "thoroughly inspect the interchanged trailer prior to taking possession and control of
19 the trailer and after taking possession and control of the trailer, [Swift] accepts exclusive responsibility
20 for any loss, damage, or liability resulting from any mechanical defect." Docket No. 31, Ex. B at 1.

21 Alaubali cites *Johnstone v. Panama Pac. Int. Exposition Co.*, 187 Cal. 323 (Cal. 1921), a case
22 in which a concessionaire let an electric wheelchair to an interested patron, who then drove the vehicle
23 into the plaintiff and injured her. Unlike the bailor and bailee in *Johnstone*, Rite Aid, as bailor, had an
24 extensive contractual arrangement with a bailee nationally recognized for its experience in the business
25 of commercial hauling. *See* Docket No. 33, ¶ 1. Alaubali mischaracterizes Swift's individual drivers
26 as the bailees in an effort to establish a duty owed by Rite Aid to Swift and the decedent. Because the
27 hauling contract shows Rite Aid supplied its trailers to Swift only, no genuine issue of material fact
28

7

exists under this theory of negligence.

**B.     Motor carrier safety violations**

Rite Aid also moves for summary judgment on Alaubali's claims pursuant to federal motor carrier safety regulations. Specifically, the plaintiff points to 49 C.F.R. 391.11 and 49 C.F.R. 380.113, two regulations promulgated by the Federal Motor Carrier Safety Administration "to support a safe and efficient transportation system." 49 U.S.C. § 31133. The first regulation states that "[a] person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle . . . . A motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle." 49 C.F.R. 391.11. The second regulation mandates that "[n]o motor carrier shall allow, require, permit or authorize an individual to operate a [longer combination vehicle (LCV)] unless he/she meets the requirements [of the regulations] and has been issued the LCV driver-training certificate. . . ." 49 C.F.R. 380.113(a)(1).

Both regulations apply to "motor carriers." Alaubali contends Rite Aid is a motor carrier because, as defined by statute, the term "includes the terms employer and exempt motor carrier." 49 C.F.R. § 390.5. In the same section, the term "employer" means "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business." *Id.* Rite Aid argues that it is not a motor carrier subject to the federal regulations because 1) at the time of the collision, Rite Aid was acting as a shipper and not a carrier, 2) Rite Aid operates as a private carrier and not a "for hire" carrier and 3) the federal regulations do not provide a private right of action for personal injuries. *See* Docket No. 30 at 15. For the reasons stated below, Rite Aid has demonstrated that it was acting as a shipper and not a motor carrier on the day of the fatal crash, and so it is unnecessary to address Rite Aid's last two arguments.

Alaubali's attempt to bootstrap Rite Aid into "motor carrier" status by stretching the statutory definition fails because the definitions of motor carrier and employer, as used in the regulations, describe precisely the role assumed by Swift in this instance as an independent contractor. Swift was a "for hire" carrier responsible for transporting Rite Aid's goods. *See* Docket No. 31, Ex. A at 1. Swift alone selected the drivers it wanted for each job, the types of transportation equipment needed, and the route

8

for each delivery. *See* Docket No. 31, ¶ 8. Not only was Swift contractually granted entire control over the transport operation,[4] but it also accepted "exclusive responsibility for any loss, damage or liability resulting from any mechanical defect that reasonably could have been detected in [Swift's] inspection of the trailer." Docket No. 31, Ex. B at 1. It was Swift, not Rite Aid, that assumed responsibility for compliance with "all laws and regulations," just as Swift warranted it "has been authorized by the U.S. Department of Transportation to operate as a motor carrier." Docket No. 31, Ex. A at 1-2. In this instance it is apparent from both the contract, which named Swift as "carrier" and Rite Aid as "shipper," and the surrounding facts that Swift was the carrier and Rite Aid the shipper.

Alaubali offers no case, statute[5] or legislative history to support her allegation that Rite Aid, as a shipper using an independent contractor to carry its goods from one point to another, is subject to the driver qualification mandates of the Federal Motor Carrier Safety Regulations. Since the statute is inapplicable to a shipper like Rite Aid in this instance, Rite Aid is entitled to summary judgment on Alaubali's claims under the motor carrier regulations.

**C.    Rite Aid's objections to evidence**

Rite Aid objects to certain evidence presented by Alaubali with her opposition to summary judgment. *See* Docket No. 45. Since none of the disputed evidence was used in rendering this opinion, Rite Aid's objections are overruled as moot.

---

[4] This control focused particularly on personnel. *See* Docket No. 31, Ex. A at 2.

[5] Although the plaintiff cites 49 U.S.C. § 31131 to underscore the broad purposes underlying the Motor Carrier Safety Act of 1984, this statute fails to shed light on any precise definition of the words "employer" or "motor carrier" in the context of the Federal Motor Carrier Safety Regulations.

9

**CONCLUSION**

Accordingly, Rite Aid's motion for summary judgment [Docket No. 30] is GRANTED. Rite Aid's objections to plaintiff's evidence [Docket No. 45] are OVERRULED as moot. Rite Aid's miscellaneous motion pursuant to Local Rule 7-11 [Docket No. 53] is likewise DENIED as moot.

IT IS SO ORDERED.

October 16, 2007                    *Saundra B Armstrong*

                                          Saundra Brown Armstrong
                                          United States District Judge